USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/15/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER NEAL,

     Plaintiff,

  v.

POLICE OFFICER ROMAINE WILSON,
POLICE OFFICER JUAN RODRIGUEZ,
POLICE OFFICER OSVALDO
MALDONADO, POLICE OFFICER COTY
GREEN, POLICE OFFICER BAUDILO
GARCIARIVAS, POLICE SERGEANT
ANGEL BONES, POLICE LIEUTENANT
DAVID CAMHI, DETECTIVE JOSE
MARRERO, and DETECTIVE JOHN
SCOLLO,

     Defendants.

No. 15-CV-2822 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

  *Pro se* Plaintiff Christopher Neal brings this action against Police Officer Romaine Wilson,

Police Officer Juan Rodriguez, Police Officer Osvaldo Maldonado, Police Officer Coty Green,

Police Officer Baudilo Garciarivas, retired Sergeant Angel Bones, Lieutenant David Camhi, and

Detective Jose Marrero of the New York Police Department ("NYPD") pursuant to 42 U.S.C.

§ 1983.[1] His claims arise out of arrests that occurred on August 20, 2012 and November 23, 2012.

Construed liberally, Plaintiff's Second Amended Complaint ("SAC") asserts claims for false arrest

and malicious prosecution in connection with both of the arrests and claims for excessive force

and failure to intervene in connection with the November 23 arrest. Before the Court is

Defendants' motion for summary judgment. For the reasons set forth below, the Court grants

---

[1] Detective John Scollo was also named as a defendant, but was never served.

summary judgment to Defendants with respect to all claims arising out of the August 20 arrest and with respect to the false arrest and malicious prosecution claims arising out of the November 23 arrest. There are, however, genuine issues of material fact with respect to Plaintiff's excessive force claims against Lieutenant Camhi and Officer Wilson and with respect to his failure to intervene claims against all of the officers who were present during the November 23 arrest. Accordingly, summary judgment on those claims is denied.

## FACTUAL BACKGROUND[2]

### I.    The August 20 Arrest

On August 20, 2012, Defendants Detective Marrero and Sergeant Bones were part of a team assigned to execute a "buy and bust" operation in the Bronx. ECF No. 95, Defs.' 56.1 Statement ("Defs.' St.") ¶ 1. As part of that operation, an undercover officer approached two men and stated that he wanted to buy heroin. *Id.* ¶ 2. One of the two men[3] approached Plaintiff and

---

[2] The following facts are undisputed unless otherwise noted.

Plaintiff's Rule 56.1 counterstatement does not comply with Local Civil Rule 56.1(b), which provides that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Plaintiff includes a statement of undisputed facts, but does not specifically respond to or controvert Defendants' statement. Although Local Civil Rule 56.1(c) provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party," "where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions," *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009). Moreover, "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted). In light of Plaintiff's *pro se* status, the Court has conducted such a review and has treated evidence that is inconsistent with Defendants' Rule 56.1 statement as controverting it.

[3] The parties dispute which of the two men approached Plaintiff and engaged in the drug transaction; this discrepancy is not, however, material to the instant motion.

asked him "who had the heroin." *Id.* ¶ 5; ECF No. 115-1, Pl.'s Dep. at 54:18–21. Plaintiff directed the man to someone on the first floor of his building. Defs.' St. ¶ 6; ECF No. 115-1, Pl.'s 56.1 Statement ("Pl.'s St.") ¶ 3. Plaintiff and the man entered the building together, but then separated. Defs.' St. ¶ 7; Pl.'s Dep. at 57:2–6. Plaintiff testified that he observed the man with whom he had entered the building engaging in a drug transaction on the first floor. Pl.'s Dep. at 60:14–24. According to Plaintiff, his involvement in the drug transaction was limited to directing the man to the drug dealer in his building. *See id.* at 55:13–18, 71:19–25, 74:5–7.

The undercover officer communicated a different version of events to Detective Marrero, the arresting officer. ECF No. 96-2, Crim. Ct. Compl. The undercover officer told Detective Marrero that he approached the two men, informed them that he wanted to buy six bags of heroin, and handed one of them a sum of marked currency. *Id.*; Defs.' St. ¶ 10. The man who had received the money told Plaintiff that he needed six bags, and Plaintiff responded that the bags would be in a candy machine. Defs.' St. ¶ 11. The undercover officer stated that he saw Plaintiff place six bags in a candy machine and that he later recovered the bags, which contained a beige powdery substance that was subsequently confirmed to be heroin. *Id.* ¶ 12.

After receiving the foregoing information from the undercover officer, Detective Marrero arrested Plaintiff. Defs.' St. ¶ 13; Pl.'s St. ¶¶ 6–7. Sergeant Bones is listed on the arrest report as the approving supervisor. *See* Defs.' St. ¶ 18; ECF No. 96-4, Arrest Report. No drugs or marked currency were found on Plaintiff's person. *See* Pl.'s Dep. at 51:18–52:13.

Plaintiff was released on his own recognizance. Pl.'s St. ¶ 11. On September 12, 2012, a grand jury indicted Plaintiff, charging him with (1) criminal sale of a controlled substance in or near school grounds; (2) criminal sale of a controlled substance in the third degree; and (3) criminal

possession of a controlled substance in the third degree. Defs.' St. ¶ 19. The case was dismissed on July 8, 2013. Pl's. St. ¶ 12; ECF No. 115-2, at 56–57.

## II.    The November 23 Arrest

On November 23, 2012, Plaintiff was walking with a woman in or around his apartment building when he was confronted by Audrey, the mother of one of his children, who accused him of cheating on her with someone who lived at the woman's residence. Defs.' St. ¶¶ 20–21; Pl.'s St. ¶ 13. An altercation ensued during which Audrey attempted to "put her hands" on the woman, and Plaintiff got between the two and tried to stop them. Defs.' St. ¶ 22; Pl.'s St. ¶ 14. The woman ran away, and Plaintiff felt something hit him on the head and felt blood running down his head. Pl.'s Dep. at 87:13–20. He turned around and saw that Audrey's daughter, Kiana, had hit him on the head with a glass bottle. *Id.* at 87:20–21, 88:7–10.

According to Plaintiff, at this point, he was about to "go after" Kiana and her child's father Chris, who was also present. *Id.* at 88:3–5, 92:15–21. He admitted that he "was . . . going to put [his] hands on [Kiana] when [Chris] jumped in the way," but denied making physical contact with Kiana or Chris. *Id.* at 92:24–93:6. Plaintiff testified that after this confrontation, he went upstairs and got a gun, came downstairs, and told Chris to go get his gun, which Chris declined to do. *Id.* at 95:1–2. Plaintiff denied threatening Kiana with the gun. *Id.* at 97:1–3.

At around 2:04 a.m., Kiana's sister called 911, stated that Plaintiff was "trying to shoot her sister" and had "hit her mom," and provided Plaintiff's name and description. Defs.' St. ¶ 29; ECF No. 96-6, Sprint Report. Another call was made several minutes later indicating that a male had been hit in the head with an object. According to Plaintiff, he did not make the second call and does not know who did. Pl.'s St. ¶ 17; Pl.'s Dep. at 93:23–25, 94:2–6.

When the police arrived on the scene, Kiana told Officer Rodriguez that, following a verbal dispute, Plaintiff had struck her in the face with a closed fist, causing a cut inside her upper lip, bleeding, bruising, and substantial pain. Defs.' St. ¶ 31; ECF No. 96-7, Crim. Ct. Compl. The officers proceeded up the stairs and entered Plaintiff's apartment through an open door. Defs.' St. ¶ 32; Pl.'s Dep. at 97:17–22. Plaintiff was in the kitchen tending to his head wound. Pl.'s Dep. at 97:10–16. One of the officers asked Plaintiff if he lived in the apartment, and Plaintiff responded that he did and showed the officers his identification. *Id.* at 104:6–8. According to Plaintiff, the officers told him that he had to come with them "to go to the hospital," but he refused. *Id.* at 104:8–12. Officer Rodriguez then reached out to grab Plaintiff, and Plaintiff "knocked his hands away." *Id.* at 104:12–20, 105:5–8. Plaintiff heard officers yell that he should "stop resisting" and another officer, who Plaintiff believes was Officer Maldonado, grabbed him as well. *Id.* at 104:19–25. At some point, Plaintiff's dog charged onto the scene and grabbed one of the officers by the foot, but was then taken away by another person in the residence. *Id.* at 106:15–107:8.

Plaintiff testified that, throughout the struggle, he was feeling "hits, grabs, [and] pulls" and was "[p]ushing [the officers] off of [himself]," "[t]rying to break their hold," and "physically trying to get away." *Id.* at 107:15–17, 108:3–5. Plaintiff admitted that he "stiffened" his arms, as alleged in Officer Rodriguez's arrest affidavit. *Id.* at 111:2–8. After the officers continued to yell "stop resisting," one of the officers tased him. *Id.* at 109:12–17. When the taser failed to immobilize Plaintiff, an officer tripped him and, together, they fell through a door into Plaintiff's bedroom and onto his bed. Defs.' St. ¶ 45; Pl.'s Dep. at 112:15–17. As Plaintiff was being held down on the bed by four officers, he alleges that Officer Wilson hit him on the back several times with a retractable baton. Pl.'s Dep. at 114:14–24, 115:24–116:13. After he was hit with the baton, Plaintiff was handcuffed and taken to a police van. *Id.* at 117:14–16, 118:19–23.

Plaintiff was released on his own recognizance. Pl.'s St. ¶ 30. The charges against Plaintiff were dismissed on April 18, 2013. *Id.* ¶ 31; ECF No. 115-2, at 58.

## DISCUSSION

### I.     Summary Judgment

To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). "The movant bears the burden of demonstrating the absence of a question of material fact." *Chaparro v. Kowalchyn*, No. 15-CV-1996 (PAE), 2017 WL 666113, at *3 (S.D.N.Y. Feb. 17, 2017). "When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in [Rule 56], must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether to grant summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (quotation marks omitted). Furthermore, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (alteration, citation, and quotation marks omitted).

### II.    Qualified Immunity

"Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tracy v. Freshwater*, 623 F.3d 90, 95–96 (2d Cir. 2010) (quotation marks omitted); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015). "Accordingly, when a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy*, 623 F.3d at 96. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quotation marks omitted). "[C]learly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (quotation marks omitted). While Supreme Court precedent "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 551 (alteration and quotation marks omitted). "[T]he clearly established law must be particularized to the facts of the case." *Id.* at 552 (quotation

marks omitted); *see also Mullenix*, 136 S. Ct. at 308 ("This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (quotation marks omitted)).

## III.    False Arrest Claims

Defendants are entitled to summary judgment in connection with Plaintiff's false arrest claims because the evidence, viewed in the light most favorable to Neal, does not make out a violation of a constitutional right. The elements of a § 1983 claim for false arrest are the same as the elements of such a claim under New York state law and are well established. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not "otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). The existence of probable cause is a complete defense to a false arrest claim. *Jenkins*, 478 F.3d at 84; *see also Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002).

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. "Probable cause is to be assessed on an objective basis." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); *see also Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest . . . . [A]n arresting officer's state of mind . . . is irrelevant to the existence of probable cause.").

### A.    The August 20 Arrest

The defendants involved in the August 20, 2012 arrest were Detective Marrero, the arresting officer, and Sergeant Bones, a supervising officer who approved the paperwork for the arrest after the fact. In making the arrest, Detective Marrero relied on information from the undercover officer. *See* ECF No. 96-2, Crim. Ct. Compl. Detective Marrero had been told that the undercover officer's request for six bags of heroin was relayed to Plaintiff, who responded that the drugs would be in a candy machine, and that Plaintiff then placed six glassines that contained a beige powdery substance into a candy machine. *See id.*; Defs.' St. ¶¶ 10–12.[4]

Although Plaintiff disputes any involvement in the drug transaction other than directing an individual to a heroin dealer,[5] based on the foregoing information from the undercover officer, Detective Marrero had probable cause to arrest Plaintiff for the sale, possession with intent to sell, or possession of a controlled substance in violation of N.Y. Penal Law §§ 220.39, 220.16, and/or 220.03. "A police witness . . . may establish probable cause by personal knowledge, as well as by information supplied by fellow officers . . . ." *People v. Edwards*, 95 N.Y.2d 486, 491 (2000); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[P]olice officers, when making a

---

[4] Detective Marrero's recounting of what the undercover officer told him is set forth in a Criminal Court Complaint that was filed in Bronx Supreme Court. The Criminal Court Complaint itself is admissible as a business record under Federal Rule of Evidence 803(6) and as a public record under Federal Rule of Evidence 803(8). *See Jenkins v. City of New York*, No. 10-CV-4535 (AJN), 2013 WL 870258, at *2 (S.D.N.Y. Mar. 6, 2013) ("[E]ntries in a police report based on an officer's own observations and knowledge may be admitted as business records . . . [and] may also be considered public records . . . ."); *Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000) (finding a criminal complaint to be admissible under the business records exception). While the statements made by the undercover officer to Detective Marrero are not admissible for their truth, they are admissible for the purpose of establishing probable cause. *See Jenkins*, 2013 WL 870258, at *2 ("To the extent that the reports . . . contain information provided by an informant, that information is only considered by the Court for the effect it had on the officers in their probable cause analysis . . . ."); *Williams v. City of New York*, No. 10-CV-2676 (JG), 2012 WL 511533, at *3 n.2 (E.D.N.Y. Feb. 15, 2012) ("[T]he witness statements recorded in the police reports are not inadmissible hearsay because they are not offered for the truth of the matter asserted . . . but for purposes of establishing whether the police had information establishing probable cause.").

[5] While not argued here to be a basis for probable cause, the Court notes that this conduct may itself constitute criminal facilitation. *See, e.g.*, *People v. Watson*, 20 N.Y.3d 182, 189 (2012).

probable cause determination . . . are also entitled to rely on the allegations of fellow police officers."). Even if the information provided by the undercover officer was erroneous, Detective Marrero would still have had probable cause to make the arrest as long as he reasonably relied on it. *See Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994) ("Assuming the information [the officer] relied upon was wrong, probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information.").

While Plaintiff alleges that Detective Marrero "unlawfully charg[ed] [him] with bogus charges and submitt[ed] lying statements to support those charges," ECF No. 30, SAC ¶ 2(C)(3), he does not dispute that Detective Marrero was in fact told the contested facts by the undercover officer, nor has he offered any evidence that would create a genuine dispute of fact as to what Detective Marrero was told. When opposing a motion for summary judgment, the non-moving party must point to evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). Had the undercover officer been named as a defendant, material issues of fact might remain, but given that Plaintiff has not provided any admissible evidence—nor even affirmatively asserted—that Detective Marrero misrepresented what he was told by the undercover officer, his claim against Detective Marrero must fail.

As to Sergeant Bones, "[i]t is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite . . . under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation marks omitted). Even assuming *arguendo* that Detective Marrero lacked probable cause to arrest Plaintiff, there is no showing that Sergeant Bones was personally involved in the arrest. He is not, for example, alleged to have failed to remedy a wrong after it had been reported, to have created or maintained a policy or custom under which

unconstitutional practices occurred, or to have acted negligently in managing subordinates who caused an unlawful practice. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). Accordingly, Sergeant Bones is also entitled to summary judgment on Plaintiff's false arrest claim.

## B.     The November 23 Arrest

Officers Rodriguez, Wilson, Maldonado, Green, and Garciarivas, Sergeant Bones, and Lieutenant Camhi all participated in the November 23, 2012 arrest. The officers were responding to a 911 call reporting that Plaintiff was violent, was brandishing a firearm towards the complaining witness, and had struck the complaining witness's mother. Defs.' St. ¶ 29; Sprint Report. When the officers arrived, the complaining witness told Officer Rodriguez that after a verbal dispute, Plaintiff had struck her in the face with a closed fist, causing a cut inside her upper lip, bleeding, bruising, and substantial pain. Defs.' St. ¶ 31; ECF No. 96-7, Crim. Ct. Compl. It is well-established that probable cause can be based on information that an officer obtains from another person, such as a putative victim or an eyewitness. *Simonetti*, 202 F.3d at 634. "When information is received from a putative victim or an eyewitness, probable cause exists unless circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citation omitted); *see also Williams v. City of New York*, No. 14-CV-7158 (JPO), 2016 WL 3194369, at *6 (S.D.N.Y. June 7, 2016) ("Given the absence of 'circumstances that would raise doubt' as to the veracity of [the eyewitness's] identification of [the plaintiff], the rule that eyewitness identification 'is typically sufficient to provide probable cause' controls . . . ." (quoting *Stansbury v. Wertman*, 721 F.3d 84, 90–91 (2d Cir. 2013))).

The Court has no difficulty in concluding that the officers participating in the arrest had probable cause to believe that Plaintiff had violated N.Y. Penal Law §§ 120.00 (assault in the third degree), 120.15 (menacing in the third degree), and/or 240.26 (harassment in the second degree).

Although Plaintiff's injury could have led the officers to conclude that Plaintiff was the victim and not the perpetrator of an assault, they were not required to make such an inference under the circumstances. *See Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003) (observing that officers have no duty "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest"); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (observing that officers have no duty to "explore and eliminate every theoretically plausible claim of innocence before making an arrest"). Given the complaining witness's identification of Plaintiff, her allegation that Plaintiff had committed a criminal offense, and the absence of circumstances that would raise doubt as to the complaining witness's veracity, all of the officers who participated in the November 23, 2012 arrest are entitled to summary judgment with respect to Plaintiff's claim of false arrest.

## IV. Malicious Prosecution Claims

Defendants are also entitled to summary judgment on Plaintiff's malicious prosecution claims. To prevail on a malicious prosecution claim under § 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Under New York law, these elements are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). As the third element suggests, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Nevertheless, "even when probable cause is present at the time of arrest, evidence could later surface which

would eliminate that probable cause. In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (citations and quotation marks omitted).

The Court has already determined that Defendants are entitled to summary judgment on Plaintiff's false arrest claims because probable cause existed for the arrests. There are no facts in the record to suggest that at any time after either arrest, some intervening fact caused that probable cause to dissipate. Although Plaintiff generally alleges that Detective Marrero lied about Plaintiff's participation in the August 20, 2012 drug sale, Plaintiff was indicted by a grand jury in connection with that activity on September 12, 2012. An indictment carries a presumption of probable cause absent "evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000) (quotation marks omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 82–83 (1983) ("The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, [or] that they have withheld evidence or otherwise acted in bad faith"). Plaintiff has not proffered any evidence of such conduct except for his conclusory assertions that the police "did not witness any money/drug transaction" and that he was "indicted with misleading testimony." ECF No. 115-1, Pl.'s Opp. at 6–7. Such assertions are insufficient to raise a genuine dispute of fact as to any untruthfulness, bad faith, or falsification on the part of Defendants. As for the November 23, 2012 incident, Plaintiff has similarly made no assertions suggesting that probable cause had dissipated by the time he was charged. Accordingly, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claims.

## V. Excessive Force Claims

The Court nevertheless concludes that some of Plaintiff's excessive force claims should go forward. "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Determining excessiveness requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham*, 490 U.S. at 396). In conducting this balancing, a court generally considers three factors: (1) the nature and severity of the crime leading to the arrest; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). Nevertheless, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Furthermore, "[i]t is well established that qualified immunity may operate as a defense to excessive force claims." *Mesa v. City of New York*, No. 09-CV-10464 (JPO), 2013 WL 31002, at *17 (S.D.N.Y. Jan. 3, 2013). In the context of an excessive force claim, "the question for the purposes of qualified immunity is whether a reasonable officer

could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995) (quotation marks omitted).

The escalating force used against Plaintiff during the November 23 incident consisted of several components. After Plaintiff refused to be taken into custody, Officer Rodriguez attempted to "manhandle" or "grab" him, trying to "physically put his hands on [him]." Pl.'s Dep. at 104:12–20, 105:5–8. According to Plaintiff, Officer Rodriguez tried to put him in what Plaintiff described as a "body hold," but Plaintiff "knocked his hands away." *Id.* at 104:12–20, 105:5–25. Plaintiff heard officers yell that he should "stop resisting," while another officer who he believed to be Officer Maldonado grabbed him as well. *Id.* at 104:19–25. Plaintiff claims that he felt "hits, grabs, [and] pulls" from the two officers as he continued to struggle. *Id.* at 107:15–17. After another warning to stop resisting, Plaintiff was tased by an individual that he identified as either Lieutenant Camhi or non-party Sergeant Kaiser. *Id.* at 109:12–17. Plaintiff was then tripped by Sergeant Bones, taken down onto a bed, and restrained by four officers. *Id.* at 112:15–17, 114:14–18. Finally, after Plaintiff was restrained on the bed, he claims that Officer Wilson struck him four or five times on his back with a retractable baton. *Id.* at 114:18–24, 115:24–116:2.

In addition to considering Plaintiff's deposition testimony, the Court may consider the allegations made in the SAC, which was sworn under penalty of perjury, insofar as they are made on personal knowledge. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist . . . ."). In the SAC, Plaintiff asserts that Lieutenant Camhi "st[ar]ted screaming 'STOP RESISTING' when the plaintiff was not resisting at all" and "took out a [taser] and began [tasing] plaintiff all over his body, back area and left hip are[a]," while other officers "all found this amusing and began yelling 'HIT HIM AGAIN,

HIT HIM AGAIN.'" SAC ¶ 2(A)(3). He also alleges that officers "began to physically punch and shove [him] while he was bleeding from a head wound," and that "[he] didn't understand WHY these officers were literally Assaulting him, when he . . . did nothing at all to provoke such Assault." *Id.* Subsequently, Plaintiff claims that he was thrown down onto a bed and beaten "with several strikes" of a baton by Officer Wilson. *Id.* ¶ 2(A)(5).

Given that the Court has already found that the officers had probable cause to arrest Plaintiff, they were entitled to use a reasonable amount of force to effectuate the arrest. The record indicates that Officers Rodriguez and Maldonado first attempted to grab Plaintiff in an attempt to restrain him, and that Plaintiff was repeatedly told to stop resisting. Plaintiff admits that he responded by "[p]ushing [the officers] off of [himself]," "[t]rying to break their hold," "physically trying to get away," and "stiffening up [his] arms" prior to being tased. Pl.'s Dep. at 108:3–5, 111:6–8. Given that there was probable cause for Plaintiff's arrest, no reasonable factfinder could find that this initial use of force was unreasonable under the circumstances.

The use of the taser was, however, an escalation in the officers' use of force. *See Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 290 (S.D.N.Y. 2014) (describing the use of a taser in stun mode as a "significant degree of force"), *aff'd in part, dismissed in part sub nom. Garcia v. Sistarenik*, 603 Fed. App'x 61 (2d Cir. 2015) (summary order); *Read v. Town of Suffern Police Dep't*, No. 10-CV-9042 (JPO), 2013 WL 3193413, at *8 (S.D.N.Y. June 25, 2013) ("[A] taser to the back is not a non-serious or trivial use of force akin to a shove; rather, it is a serious intrusion into the core of the interests protected." (quotation marks omitted)). Based on Plaintiff's recounting of the incident, the officers did not appear to perceive him to be a threat at the time the taser was deployed. *See* SAC ¶ 2(A)(3) (alleging that the officers found the use of the taser "amusing and began yelling 'HIT HIM AGAIN, HIT HIM AGAIN'"). Furthermore, several other

facts relevant to the reasonableness of the use of the taser are disputed. First, the extent of Plaintiff's resistance to the officers' attempts to restrain him is unclear. In the SAC, Plaintiff alleges that he "was not resisting at all" when he was tased, *id.*, while during his deposition, Plaintiff admitted to acting in a manner that could be construed as resisting arrest, *see* Pl.'s Dep. at 157:5–7 ("I'm very strong and powerful. So it's going to take more than two people to try to get me down . . . ."); *id.* at 108:3–5, 111:6–8 (referring to Plaintiff "[p]ushing [the officers] off of [himself]," "[t]rying to break their hold," "physically trying to get away," and "stiffening up [his] arms"); *id.* at 104:19–25, 109:12–17 (referring to officers' warnings to "stop resisting"). Second, there is ambiguity as to the number of times the taser was deployed. The SAC alleges that Plaintiff was tased "multiple times." SAC ¶ 2(A)(4); *see also id.* ¶ 2(A)(3) (alleging that Lieutenant Camhi "took out a [taser] and began [tasing] plaintiff all over his body, back area and left hip are[a]"); Pl.'s Dep. at 122:23–24 (referring to taser prongs "[a]ll up and down [Plaintiff's] lower back"). If it were to credit Plaintiff's testimony, a reasonable factfinder could thus conclude that the use of a taser here—potentially multiple times—was unreasonable in the circumstances, where there was no indication that any officer saw a weapon, the arrestee was injured from a prior incident, two officers were already in the process of restraining the arrestee, other officers were present on the scene, and the arrestee's resistance was limited to stiffening his arms and trying to push the officers off of him. This is especially so where officers on the scene are said to have found the use of the taser "amusing."

Courts have generally granted qualified immunity for deploying a taser if the suspect is fleeing or poses an immediate threat to officers. *See Soto v. Gaudett*, 862 F.3d 148, 159 (2d Cir. 2017) (observing that "no precedent . . . established that a suspect who was fleeing had a right not to be stopped by means of a taser" and reversing district court's denial of qualified immunity

to an officer who tased an individual who was undisputedly fleeing); *Cruz v. City of New Rochelle*, No. 13-CV-7432 (LMS), 2017 WL 1402122, at *23 (S.D.N.Y. Apr. 3, 2017) (finding officers entitled to qualified immunity when using taser to subdue "a non-compliant individual wielding a weapon"); *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 435 (S.D.N.Y. 2015) (same), *aff'd*, 2017 WL 3951759 (2d Cir. Sept. 8, 2017) (summary order). By contrast, courts have denied qualified immunity to officers who used tasers on individuals who were not actively resisting arrest or who had already been successfully restrained. *See Soto*, 862 F.3d at 159–61 (finding a lack of appellate jurisdiction with respect to district court's denial of qualified immunity to officers who were alleged to have tased an individual who was on the ground and no longer fleeing); *Garcia*, 43 F. Supp. 3d at 298 (denying qualified immunity to officer who tased individual after he was on the floor and had been "largely restrained"); *Hicks v. City of New York*, No. 12-CV-5081 (PKC) (SMG), 2015 WL 5774575, at *10 (E.D.N.Y. Aug. 27, 2015) (recommending denial of qualified immunity with respect to the use of a taser against a plaintiff who asserted that "he did nothing to provoke any use of force"), *report and recommendation adopted*, 2015 WL 5774658 (E.D.N.Y. Sept. 30, 2015); *Read*, 2013 WL 3193413, at *8 (denying qualified immunity to officer who tased individual who was tied to a railing); *cf. Tracy*, 623 F.3d at 98 (vacating grant of summary judgment on excessive force claim stemming from the use of pepper spray on "a defendant already in handcuffs and offering no further active resistance"). Where, as here, there is a genuine dispute as to whether, or at least to what extent, an unarmed arrestee was resisting arrest or otherwise presented a threat at the time a taser was deployed, qualified immunity is not appropriate. Accordingly, Lieutenant Camhi, who Plaintiff alleges was the officer who used the taser against him, is not entitled to qualified immunity on the excessive force claim.[6]

---

[6] Defendants argue that because they stated in a response to Plaintiff's interrogatories that Sergeant Kaiser, a non-party to the case, discharged the taser, any claim relating to the use of the taser is not properly

Immediately after Plaintiff was tased, he claims that he was tripped by Sergeant Bones and fell through a doorway into his bedroom and onto his bed, at which point four officers attempted to hold him down. *See* Pl.'s Dep. at 112:15–17, 114:14–18. The Court finds that this use of force was directly calculated to restrain Plaintiff and that no reasonable factfinder could conclude that it was objectively unreasonable under the circumstances.

Finally, Plaintiff alleges that prior to being handcuffed he received several blows to his back from a baton wielded by Officer Wilson. In his deposition, Plaintiff testified that four officers were holding him down on the bed at the time he was struck by Officer Wilson, with two officers on top of his back and one on each of his arms. *Id.* at 115:4–6. He further alleges that Officer Wilson only stopped hitting him with the baton after he addressed the officer by name and asked him to desist. *Id.* at 114:20–24; SAC ¶ 2(A)(5). Here, there are again disputed issues of fact concerning whether Plaintiff was still resisting or whether he had already been effectively restrained by the officers at the time he was struck. Crediting Plaintiff's version of events, a reasonable juror could conclude that the baton strikes constituted excessive force. Furthermore, an officer's use of a baton on a suspect who has already been restrained would violate clearly established law prohibiting the use of gratuitous and unnecessary force. *See Tracy*, 623 F.3d at 99 n.5 ("[I]t was well established at the time of the [incident in question] that the use of entirely gratuitous force is unreasonable and therefore excessive . . . ."); *Meyers v. Baltimore Cty., Md.,*

---

before the Court. The SAC, however, plainly asserts that Plaintiff was tased by Lieutenant Camhi. *See* SAC ¶ 2(A)(3). In light of this allegation, whether Lieutenant Camhi or Sergeant Kaiser used the taser is a disputed fact that cannot be resolved on a motion for summary judgment.

The Court also notes that Plaintiff attempted to add Sergeant Kaiser and two other defendants to this case in a proposed Third Amended Complaint. ECF No. 97. While Judge Gorenstein denied the motion to amend, he does not appear to have considered Plaintiff's request to add Sergeant Kaiser. *See* ECF No. 105, at 1 ("The only substantive change in the complaint is the addition of two new defendants—both undercover police officers."). The Court will schedule a telephone conference to address this issue.

713 F.3d 723, 735 (4th Cir. 2013) ("The use of any unnecessary, gratuitous, and disproportionate force, whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity if the subject is unarmed and secured." (quotation marks omitted)); *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) ("The right of an unresisting suspect to be free from baton strikes . . . was clearly established [at the time of the incident in question]."). Therefore, Officer Wilson is not entitled to qualified immunity on Plaintiff's excessive force claim for the alleged baton strikes to his back.

In sum, summary judgment is granted as to Plaintiff's excessive force claims against Officers Rodriguez, Maldonado, Green, and Garciarivas and Sergeant Bones, but denied with respect to Lieutenant Camhi and Officer Wilson.

## VI.    Failure to Intervene Claims

Finally, Plaintiff's failure to intervene claims also survive. "A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted); *see also Curley*, 268 F.3d at 72 ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be.").

Because questions of fact remain as to whether Lieutenant Camhi and/or Officer Wilson violated Plaintiff's constitutional rights by using excessive force to effectuate his arrest, there are also questions of fact as to whether the other officers present at the scene failed to intervene to

prevent such violations from happening. *See Richardson v. Providence*, No. 09-CV-4647 (ARR), 2012 WL 1155775, at *4 (E.D.N.Y. Apr. 6, 2012) ("Because defendants' only basis for dismissing plaintiff's claims for failure to intervene . . . is that plaintiff cannot establish a violation of any constitutional right, and this court has found that a material issue of fact exists as to whether plaintiff was unreasonably detained, the claim [for failure to intervene] also cannot be dismissed on this ground."); SAC ¶ 2(A)(3) (alleging that while Plaintiff was getting tased, other officers "found this amusing and began yelling 'HIT HIM AGAIN, HIT HIM AGAIN'").

Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's failure to intervene claims against Officers Rodriguez, Maldonado, Green, Garciarivas, and Wilson, Sergeant Bones, and Lieutenant Camhi, who are the named Defendants who Plaintiff claims were present when the alleged constitutional violations took place.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate Detectives Jose Marrero and John Scollo from the case and close Docket Number 93.

The Court will hold a telephone conference on October 6, 2017 at 11:30 a.m. Defendants' counsel is directed to make the arrangements necessary for Plaintiff to participate.

SO ORDERED.

Dated:    September 15, 2017
          New York, New York

Ronnie Abrams
United States District Judge

21